UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Jeffrey B. Guinn, | Case No. 2:19-cv-00649-CDS |
| Appellant | Case No. BK-S-13-18986-BTB CHAPTER 7<br>Adversary No. BK-S-14-01007-BTB |
| v. | **Order Resolving Appeal of the Bankruptcy Court's Memorandum Decision** |
| CDR INVESTMENTS, LLC, a Nevada Limited Liability Company, *et al.*, | |
| Respondents | [ECF Nos. 15, 20, 23] |

Appellant Jeffrey Guinn appeals the March 31, 2019 Memorandum Decision (ECF No. 365) issued by the United States Bankruptcy Court for the District of Nevada. ECF Nos. 15, 23. The Bankruptcy Court found, *inter alia*, that appellant owed respondents a nondischargeable debt pursuant to 11 U.S.C. § 523(a), because the debt was a product of fraud. ECF No. 365 at 3–4, 114–115. Specifically, the Decision held that appellant "fraudulently concealed information from [respondents] on four loans made as the Great Recession started: Grand Teton Residential, LLC (Loan No. 60-00318-2); Coronado Eastern, LLC (Loan Nos. 60-00317-1 and 80-00065-1); and Coronado Horizon/Boulder, LLC (Loan No. 60-00322-4)" (collectively, the Contested Loans). *Id*. Appellant lodges three challenges to this finding: whether the Bankruptcy Court 1) applied the correct legal standard in assessing the underlying Nevada state fraud claim, in particular, the standard to prove reliance and causation; 2) applied the correct legal precedent in determining the underlying Nevada fraud claim, in particular, regarding the findings on reliance and causation; and 3) whether there was sufficient evidence for the requisite elements of reliance and causation for the Bankruptcy Court to conclude that appellant had committed fraudulent concealment under Nevada law. ECF No. 15 at 2. Though this is admittedly a close call, I affirm the Bankruptcy Court's Decision in full.

I.      Background

The following facts are taken from the Bankruptcy Court's "Facts" section of the Decision.[1] Decision, ECF No. 365 at 4–31. Respondents, Donna and Charles Ruthe, were investors in Aspen Financial, LLC (Aspen), a company solely owned by the appellant, Jeffrey Guinn. *Id*. at 2, 4–6, 11–12. Aspen brokers hard money loans—loans secured by real estate, rather than traditional credit checks—to local Las Vegas contractors and developers, which are funded by investors like respondents. *Id*. at 4–6. These loans are generally considered higher risk, and as a result, bear a higher interest rate for investors. *Id*. Respondents began investing in Aspen in 2000, originally starting only with first trust deed loans, then after approximately a year and a half, switching to riskier second deed of trust loans. *Id*. at 13–15. The record indicates that respondents generally trusted appellant (who was the son of a friend), grew complacent over time (particularly after years of receiving consistent interest checks), and at some point, likely early on, began committing and funding loans without ever reading the "Opening Package," which was habitually mailed to them after the funds were committed.[2] *Id*. at 17–18, 27–29, 50–51.

While the record indicates that respondents invested liberally in Aspen loans, they did not blindly accept every solicitation. Notably, in June 2007, respondents refused to invest in a loan for which they were informed the purpose was to provide cash to the borrower's principal. *Id*. at 18–19. Mrs. Ruthe testified that she informed Aspen that she did not want her, or her father's funds, to be used for any loans that provided cash to borrowers. *Id*. at 19. Shortly thereafter, the details of which are disputed by the parties, respondents' relationship with Aspen soured and respondents decided not to fund or roll over funds into any future Aspen loans. *Id*. at 18–21. By this time, the Great Recession had begun, and borrowers defaulted on 26 of respondents' outstanding loans with Aspen. *Id*. at 21–22.

---

[1] The docket entry numbers that I use when citing the Decision refer to the Bankruptcy Court docket, Case No. 14-01007-gs.

[2] The record indicates that Aspen solicited and provided information about potential loan investments to respondents over the phone. *Id*. at 15–16.

Respondents brought a civil action alleging various claims of fraud against Aspen and appellant in 2009, which was later refiled as an advisory complaint in bankruptcy court when appellant filed for bankruptcy in 2013. The Bankruptcy Court presided over a fourteen-day trial to resolve the claims in which it heard numerous witnesses, including experts for both sides, and received thousands of exhibits in evidence. *Id.* at 2. The Bankruptcy Court also reviewed lengthy, post-trial closing briefs from the parties. *Id.*

II.     **Legal Standard**

A district court reviews a bankruptcy court's findings of fact for clear error and its conclusions of law de novo. *See In re Gebhart*, 621 F.3d 1206, 1209 (9th Cir. 2010). "The clear error standard is significantly deferential and is not met unless the reviewing court is left with a definite and firm conviction that a mistake has been committed." *Fisher v. Tucson Unified Sch. Dist.*, 652 F.3d 1131, 1136 (9th Cir. 2011) (internal quotation and citation omitted). A factual determination is clearly erroneous if it is "illogical, implausible, or without support in inferences that may be drawn from facts in the record." *United States v. Hinkson*, 585 F.3d 1247, 1261 (9th Cir. 2009). "A mere showing that the bankruptcy court could have reached another conclusion based on the evidence presented is insufficient." *See In re Huntington Ltd.*, 654 F.2d 578, 583 (9th Cir. 1981). A bankruptcy court's decision may be affirmed "on any ground fairly supported by the record." *See In re Warren*, 568 F.3d 1113, 1116 (9th Cir. 2009).

I review appellant's challenge of whether the Bankruptcy Court applied the correct legal standard de novo. *Or. Nat. Desert Ass'n v. Locke*, 572 F.3d 610, 613–14 (9th Cir. 2009). While determining whether a claim is excepted from discharge under § 523(a)(2) presents mixed issues of law and fact that are reviewed de novo, *Diamond v. Kolcum (In re Diamond)*, 285 F.3d 822, 826 (9th Cir. 2002), appellant specifically challenges the Bankruptcy Court's findings of reliance and causation. ECF 15 at 2. These are factual determinations that I review for clear error. *Apte v. Japra (in Re Apte)*, 96 F.3d 1319, 1321 (9th Cir. 1996). The burden is on appellant to demonstrate

that any challenged findings of fact were clearly erroneous. *See In re Huntington Ltd.*, 654 F.2d 578, 583 (9th Cir. 1981).

III.   Discussion

   A.  *The Bankruptcy Court applied the correct legal standard and precedent.*

Appellant contends that in making its determinations concerning reliance and causation, the Bankruptcy Court applied the legal standard and precedent applicable to 11 U.S.C. § 523(a)(2)(A), but improper to adjudicate the underlying Nevada fraud claim. ECF No. 15 at 30–36. The parties agree on the standard that the Bankruptcy Court was required to use but disagree on which standard the Bankruptcy Court applied. *Compare id. with* ECF No. 20 at 12–16, 35–37.

A brief explanation of the standards in dispute is useful. 11 U.S.C. Section 523(a) prohibits debtors from discharging debts obtained by false pretenses, a false representation, or actual fraud. The elements of fraud under § 523(a)(2)(A) largely mirror the elements under Nevada state law, but the burden of proof and legal standard is different. Nevada law requires clear and convincing evidence and actual, subjective reliance, *Nevada Power Co. v. Monsanto Co.*, 891 F. Supp. 1406, 1417 (D. Nev. 1995) (citing *Bulbman, Inc. v. Nev. Bell*, 825 P.2d 588, 592 (Nev. 1992)), while § 523(a) requires only a preponderance of evidence and permits reliance and causation to be presumed or determined based upon the totality of the circumstances. *Duncan v. Fid. Nat'l Title Co. (In re Duncan)*, 2011 WL 3300162, at *4, 6 (B.A.P. 9th Cir. Feb. 4, 2011).

There is no dispute that the Bankruptcy Court was required to engage in a two-step process: first, determining whether a debt exists under applicable law (Nevada state law), and then determining whether the debt is excepted under discharge under § 523(a)(2)(A). *Banks v. Gill Distrib. Centers*, Inc., 263 F.3d 862, 868 (9th Cir. 2001). In other words, respondents had the threshold burden to prove fraud under Nevada state law, using the higher standard, before the Bankruptcy Court could find the debt nondischargeable under § 523(a). *See id.* Appellant

contends, in essence, that the Bankruptcy Court improperly analyzed the facts under the objective, presumption § 523(a) test only. ECF No. 15 at 30–37.

As a threshold matter, I note that the Bankruptcy Court did, in fact, correctly and in detail, identify and outline the correct differing federal and Nevada state standards of law in its memorandum decision. ECF No. 365 at 33–39, 88, 102, 107. The Bankruptcy Court also explicitly advised that it reached its underlying fraud findings for the Contested Loans using the "clear and convincing" evidence standard, and for avoidance of doubt, noted that "the differences in the standard of proof do not affect the outcome of [respondents'] claims". *Id*. at 38–39.

Despite this, I recognize appellant's frustration with the way the Bankruptcy Court articulated its findings, as the Decision fails to delineate its application of each legal standard to the facts of each Contested Loan. Instead, it expresses a single conclusion for each Contested Loan after presumably filtering the facts through both standards.[3] *Id*. at 69–107. The Decision, however, among other things, addressed 26 loans following a two-week trial, so this Court will not double guess how the Bankruptcy Court wrote its memorandum, especially given that it correctly articulated each standard and confirmed that it had, in fact, applied them. I take the Bankruptcy Court at its word absent reason to believe otherwise. Appellant's speculative complaint that the Bankruptcy Court *only* applied the § 523(a) objective, presumption test to find reliance and causation ignores the parts of the Decision that evince this not to be true: the Bankruptcy Court used the Nevada law standard in reaching its conclusions.

      i.    The Bankruptcy Court did not apply an improper presumption of evidence.

Appellant asserts that the Bankruptcy Court improperly applied a "presumption" of reliance—appropriate for § 523(a), but not for Nevada law—in making its reliance (and by

---

[3] While best practice is to separate the analysis and first determine the existence of fraud under Nevada law before determining whether a debt is nondischargeable under § 523(a), to the extent the Bankruptcy Court properly applied Nevada law, a failure to detangle the standards is not fatal since Nevada law exacts a higher bar.

extension, causation) findings. ECF No. 15 at 32–37. While the Decision does not detail how the proverbial sausage was made, I see no reason to attach appellant's speculation to the Bankruptcy Court's work, particularly when viewing the well-reasoned and detailed Decision as a whole. The Bankruptcy Court wholesale rejected several of respondents' generalized fraud claims before examining detailed evidence on 26 individual defaulted loans, for which it rejected respondents' fraud claims on *22 of them*, for reasons including respondents' failure to prove that timely disclosure of the withheld information would have dissuaded them from investing (reliance) or that such omissions were the cause of their loss (causation). *See, e.g.*, *id.* at 75 ("Finally, the court finds that any disclosure of such information would not have dissuaded [respondents] from investing. Therefore, any non-disclosure was not the proximate cause of [respondents'] loss on either of the Celebrate Investment loans.").[4] Indeed, the Decision is exacting in rejecting the vast majority of respondents' claims for respondents' failure to proffer adequate affirmative evidence and nowhere does the Decision state that the Bankruptcy Court applied any presumption of evidence in assessing respondents' burden of proving reliance and causation. *See generally id.* For these reasons, I decline to agree with appellant that the Bankruptcy Court improperly applied a presumption.[5]

    ii.  The Bankruptcy Court applied the subjective Nevada law standard.

Appellant also complains that the Bankruptcy Court applied the objective, "reasonable investor" test, rather than the subjective reliance test required by Nevada law, to find reliance and causation on the Contested Loans. ECF No. 15 at 32–36. In support of this argument, appellant makes much ado about generalized language in the Decision, such as "totality of the

---

[4] *See also id.* at 79–80 ("And even if informed of Aspen's use of Community Bank's appraisal, the testimony and other evidence at trial amply demonstrates that [respondents] would not have been dissuaded from investing in this loan."); *id.* at 62–63 (rejecting, in detail, respondents' causation arguments concerning the intercreditor agreements).

[5] I reject appellant's argument that the Bankruptcy Court must have applied a presumption of reliance and causation given the record's ostensible lack of affirmative evidence to support actual reliance (ECF No. 23 at 10–11), given that I find in Section I.B. (*infra*) that sufficient evidence exists. This is admittedly a closer call.

testimony on the challenged loans to the Coronado entities" and "based upon the pattern", to demonstrate that the Bankruptcy Court was incorrectly applying precedent relating to the objective, totality of the circumstances test. *See id.* at 36–37. For one, this language was not used in the context of the relevant reliance and causation analyses. *See* Decision, ECF No. 365 at 87–88, 101–102, 107. Moreover, appellant ignores the language in the Decision that demonstrates that the Bankruptcy Court *did* understand and utilize the correct subjective standard. Indeed, the Decision's language evinces that the Bankruptcy Court considered whether *respondents*, not the proverbial "reasonable investor," would or would not have invested in each Contested Loan had they known the omitted information at the time. For example, with respect to the Coronado Eastern loan, the Decision found "that if [*respondents*] had known that Guinn and Coronado Horizon had been unable to lease the property for at least a year, *they* would not have invested in the loan. While [*respondents*] had a tremendous willingness to invest in risky, highly leveraged loans, the court finds that [*respondents*] would not have invested in this loan had Aspen and Guinn provided a more realistic, and transparent, valuation." *Id.* at 107 (emphasis added). Consistent with Nevada law, the Bankruptcy Court based its reliance finding upon what respondents *subjectively* would or would not have done, which included consideration of their particularized history of complacency.[6] *See Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1154–55 (9th Cir. 2005) ("To sustain a claim for fraud based on concealment or omission, Rivera was required to present evidence showing that *the fraud victim* would have acted differently if there had not been fraudulent concealment.") (emphasis added). Whether there was sufficient evidence for

---

[6] This is true also of the Bankruptcy Court's analysis of the other Contested Loans as well. *See id.* at 87–88 (finding that for the Grand Teton Residential, LLC loan, "[w]hile [*respondents*] exhibited a willingness to blindly invest in Aspen's brokered loans, the court finds that *even they* would not have invested in an extended project that was projected to lose money selling houses in a weakening market. For this reason, the court finds that [*respondents*] would not have invested in the Grand Teton loan if Aspen and Guinn had not concealed the loss on the houses and the pending maturity of the senior debt.") (emphasis added); *see also id.* at 101–102 ("The court further finds that Guinn concealed the amounts necessary to reach a stabilized value with the intent to defraud, and that if [*respondents*] had been aware of these amounts *they* would not have invested [in the Coronado Eastern, LLC loan].") (emphasis added).

the Bankruptcy Court to make this finding is a separate issue which I address next. However, with respect to the standard of law applied, I find that the Bankruptcy Court applied the correct standard.

      B.   *There is sufficient evidence to support the Bankruptcy Court's reliance and causation holdings.*

The heart of appellant's appeal is that, regardless of what standard the Bankruptcy Court applied, there was insufficient evidence under Nevada law to find for respondents on the elements of reliance and causation. ECF No. 23 at 5–11. This is appellant's strongest argument. As discussed, Nevada requires a plaintiff to provide affirmative evidence of actual, subjective reliance to sustain a fraud claim. *Nevada Power Co.*, 891 F. Supp. at 1417. I agree with appellant at a minimum that, as written, the Decision does not readily cue the reader to the affirmative evidence upon which the Bankruptcy Court relied in deciding that respondents had satisfied their burden on reliance and causation for the Contested Loans. Indeed, the Decision's relevant holdings state the following:

> **Grand Teton Residential, LLC (Loan No. 60-00318-2).**
> "The court further finds that [respondents] were unaware of the projected loss and maturity dates of the senior debt. *While [respondents] exhibited a willingness to blindly invest in Aspen's brokered loans, the court finds that even they would not have invested in an extended project that was projected to lose money selling houses in a weakening market. For this reason, the court finds that [respondents] would not have invested in the Grand Teton loan if Aspen and Guinn had not concealed the loss on the houses and the pending maturity of the senior debt… . Finally, the court concludes that as a result of the concealment [respondents] sustained damages by funding a loan that they otherwise would not have funded.* These [respondents] are entitled to judgment for these unpaid amounts of the Grand Teton loans. Such debts are nondischargeable under § 523(a)(2)(A) as the debts arise from a fraudulent concealment made, and created, by Guinn for which he is personally liable."

ECF No. 365 at 87–88 (emphasis added).

> **Coronado Eastern, LLC (Loan Nos. 80-00065-1 and 60-00317-1).**
> "*The court further finds that Guinn concealed the amounts necessary to reach a stabilized value with the intent to defraud, and that if [respondents] had been aware of these amounts they would not have invested. . . .* These [respondents] are entitled to judgment for these unpaid amounts of their loans. Such debts are nondischargeable under § 523(a)(2)(A) as the debts arise from a fraudulent concealment made, and created, by Guinn for which he is personally liable."

*Id.* at 101–102 (emphasis added).

**Coronado Horizon/Boulder, LLC (Loan No. 60-00322-4).**
"As with the Coronado Eastern loan, *the court finds that if [respondents] had known that Guinn and Coronado Horizon had been unable to lease the property for at least a year, they would not have invested in the loan. While [respondents] had a tremendous willingness to invest in risky, highly leveraged loans, the court finds that [respondents] would not have invested in this loan had Aspen and Guinn provided a more realistic, and transparent, valuation. Specifically, if the property had been properly valued, the resulting loan-to-value ratio would have been over 100%, and the court finds that [respondents] would not have invested. However, [respondents] did invest, and they suffered damages as a result of Guinn's fraudulent concealment.* . . . These [respondents] are entitled to judgment for these unpaid amounts of the Coronado Horizon loans. Such debts are nondischargeable under § 523(a)(2)(A) as the debts arise from a fraudulent concealment made, and created, by Guinn for which he is personally liable."

*Id.* at 107 (emphasis added).

However, a failure to cite evidence in the conclusion does not mean the evidence does not exist. Indeed, while not readily referenced in the Court's conclusions about the Contested Loans, there is sufficient evidence in the record to support the Bankruptcy Court's findings that respondents would not have invested in the Contested Loans had they been aware of the material information that Aspen omitted in its solicitation of those loans (reliance), and thus that such omissions caused respondents' damages (causation).

Most notably, there is record evidence that, despite their history of complacency, respondents were not completely indifferent to worrisome information regarding potential loan opportunities, and at least once prior, chose not to invest when alerted to this information upfront. As the Bankruptcy Court details in its opinion's fact section, in June 2007, respondents rejected investing in a loan when informed that the purpose was to provide cash to the borrower. *Id.* at 18–19.

Moreover, Mrs. Ruthe testified at trial that she and her husband would not have invested in the Contested Loans had they been apprised of the loose way in which appellant was operating his business. ECF No. 326 at 100–109. While this testimony "lacked specificity," the Bankruptcy Court credited it as "sincere." ECF No. 365 at 3. Given that the Bankruptcy Court

was more than capable of articulating (and indeed did articulate) [7] specifically when it found that respondents' testimony clashed with the record on a particular claim or element (and did not when addressing the Contested Loans), it stands to reason that the Bankruptcy Court credited this "sincere" testimony in making its findings of reliance and causation on the Contested Loans. Testimony alone can be sufficient affirmative evidence. *See Taddeo v. Am. Invsco Corp.*, 2015 WL 4416490, at *6 (D. Nev. July 20, 2015), *adhered to on reconsideration sub nom. Taddeo v. Koval Flamingo, LLC*, 2016 WL 6272367 (D. Nev. Oct. 25, 2016) (finding plaintiffs' testimony that they would not have purchased the condo if they had known about the defect and could not sell the condo due to this defect to be "sufficient evidence to support causation.").

Appellant complains, without citing case law, that these pieces of evidence are not "loan-specific." ECF No. 23 at 5–11. However, while Nevada law requires affirmative evidence, it does not require a Herculean task. Appellant does not cite any cases, Nevada or otherwise, which require such a level of specificity for proving actual reliance on information that a plaintiff *never had in the first place*. Indeed, while that level of detail is appropriate for a misrepresentation claim, it is not necessarily realistic for concealment cases. *See In re Apte*, 96 F.3d at 1323. There is sufficient affirmative evidence here for the Bankruptcy Court to have drawn a legitimate inference that respondents would not have invested in the Contested Loans had they known the respective concealed material information at the time. *See In re Discipline of Stuhff*, 837 P.2d 853, 856 (Nev. 1992) ("To be clear and convincing, evidence need not possess such a degree of force as to be irresistible, but there must be evidence of tangible facts from which a *legitimate inference* … may be drawn.") (emphasis added) (internal quotation marks and citation omitted). With the benefit of reviewing the record and evidence firsthand, the Bankruptcy Court made specific

---

[7] *See, e.g.*, ECF No. 365 at 63 ("[Respondents] argue that they would not have invested in these three loans if they had known that Aspen would enter into the Intercreditor Agreements. [Respondents] rely upon Donna's testimony to establish this point. This strikes the court as second-guessing, and the overwhelming evidence at trial contradicts this testimony. . . . The court, therefore, discredits [respondents'] statements that they would not have invested in these three loans if they had been aware of Aspen's intent to enter into these Intercreditor Agreements with Ohio Savings.").

determinations—that it rejected for 22 other loans—that the concealed material information relating to the Grand Teton Residential, LLC, Coronado Eastern, LLC and Coronado Horizon/Boulder, LLC loans would have been problematic enough for respondents, even accounting for their investment proclivities, to have dissuaded them from investing if they had known the information at the time. My review of the record does not leave me with "a definite and firm conviction that a mistake has been committed." *Fisher*, 652 F.3d at 1136.

While the evidence is not as specific as appellant argues it should be, applying the clear error standard, I found the Bankruptcy Court's findings "plausible in light of the record viewed in its entirety" and thus affirm the Decision. *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985).

## VI. Conclusion

IT IS THEREFORE ORDERED that the Decision of the Bankruptcy Court (ECF No. 365) is affirmed in full and appellant's appeal of same **[ECF Nos. 15, 23]** is DENIED.

The Clerk of Court is kindly directed to close this case.

DATED: September 1, 2023

_____
Cristina D. Silva
United States District Judge